**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

FILED IN CLERKS OFFICE
2026 OCT 28 A 10:12
U.S. DISTRICT COURT DISTRICT OF MASS.

| | |
|---|---|
| HARRISON COPLEY MAYOTTE,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF TOWNSEND, MASSACHUSETTS<br>Defendant. | Case No. ______________<br><br>COMPLAINT FOR FIRST AMENDMENT RETALIATION, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF;<br>JURY TRIAL DEMANDED |

**COMPLAINT**

## I. NATURE OF THE ACTION

1. The Town of Townsend has placed three measures directed at its sitting elected Town Clerk on the November 10, 2026 Special Town Meeting warrant. Articles 1 and 2 target his present fiscal-year compensation. Article 3, authored and sponsored by the Select Board, seeks authority to end his current elected term upon appointment of a successor. The Town advanced these measures while Plaintiff Harrison C. Mayotte was actively suing and petitioning public authorities concerning municipal administration.

2. Article 2 proposes fixing a reduced salary for the entire fiscal year beginning July 1, 2026, then collecting the difference through remaining biweekly pay periods immediately after the November 10 meeting. Article 1 proposes transferring funds from the Clerk Salary appropriation to Legal Expenses. Together, they place the current compensation of an identified individual before voters following a public proposal to calculate the reduction from the legal costs of Mayotte's lawsuits.

3. The First Amendment prohibits government from using public financial or institutional power to penalize protected speech and petitioning.

## II. PARTIES, JURISDICTION, AND VENUE

4. Mayotte is a Townsend resident and the independently elected Town Clerk. He serves a current three-year term under the Townsend Charter and receives compensation in regular installments.

5. Defendant Town of Townsend, Massachusetts, is a municipality with offices at 272 Main Street, Townsend, Massachusetts.

6. This Court has subject-matter jurisdiction over Plaintiff's First Amendment claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and 42 U.S.C. § 1983. The Court may grant appropriate equitable relief and, if a live controversy is established, declaratory relief under 28 U.S.C. §§ 2201-2202.

7. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the closely related Massachusetts claims concerning legally fixed compensation and appropriation authority.

8. Venue lies in this District under 28 U.S.C. § 1391(b)(2).

## III. THE CHARTER AND OCTOBER 26 WARRANT

9. The Townsend Charter, enacted by 2024 Mass. Acts ch. 229, § 2, vests municipal legislative power in Town Meeting, executive power in the Select Board, and a three-year elected term in the Town Clerk. Townsend Charter §§ 1-4, 2-1, 3-2, 3-4. The Board has responsibilities for Town Meeting warrants and additional discretionary authority concerning its own sponsorship. *Id.* §§ 2-6, 2-7.

10. The signed warrant dated October 26, 2026, was executed by Valerie E. Goodrich, Laura E. Shifrin, and Sarah Logan, the three participating Select Board members. Its return

records posting on October 27. It calls a Special Town Meeting for November 10, 2026, at 7:00 p.m. at North Middlesex Regional High School. A true copy is attached to this Complaint as Exhibit A.

11. Article 1, labeled "Submitted by Citizens' Petition," proposes transferring an unspecified amount from the FY2027 Town Clerk Salary appropriation to the FY2027 Legal Expenses operating appropriation. Ex. A, at 1.

12. Article 2, likewise labeled "Submitted by Citizens' Petition," invokes Mass. Gen. Laws ch. 41, § 108 to reduce the Clerk's total annual salary for FY2027, July 1, 2026 through June 30, 2027. Its stated mechanism reduces the remaining biweekly payments to achieve the lower total for the full fiscal year, effective the first full pay period following dissolution of the November 10 meeting. Ex. A, at 1.

13. As of October 28, 2026, Townsend has not established its FY2027 tax rate. The November 10 meeting therefore falls before the anticipated rate-setting. Section 108's timing condition remains an available pathway for a salary-revision vote if the required two-thirds vote and other statutory requirements are satisfied.

14. Article 3 is expressly labeled "Submitted by the Select Board." The proposed special act removes the Clerk from the Charter's list of elected offices, establishes an appointed Clerk, and provides in Section 5 that the elected incumbent's term terminates upon appointment of a successor following effectiveness of the act. The act would take effect upon passage. Ex. A, at 1-2.

15. Town Meeting has not yet voted on Articles 1-3. Article 3 would require further legislation from the Massachusetts General Court and a subsequent successor appointment before the contemplated early end of Mayotte's elected service. The warrant nevertheless documents the Select Board's own decision to sponsor that accelerated transition.

## IV. PROTECTED PETITIONING AND THE TOWN'S RESPONSE

16. Mayotte has publicly advocated election-law compliance, records access, fiscal accountability, and transparent municipal administration. He sought state-agency guidance and judicial relief in disputes about election and records practices. On October 6, 2026, he filed Middlesex Superior Court Civil Action No. 2681CV02668 as an individual public-records requester seeking judicial relief concerning Town Hall security-camera recordings.

17. On October 9, Town Administrator Kieran Meehan published an official statement identifying Mayotte's lawsuits and attributing approximately $25,000 in municipal legal expenses to them, excluding insurance-counsel fees. The statement demonstrates Town knowledge of the litigation and made its reported financial cost a subject of public debate.

18. During the October 14 Select Board meeting, citizen petitioner Dawn Priest proposed a reduction of the Clerk's personal compensation measured by the Town's actual litigation-related legal expenses. The petitioner described the calculation. Meehan offered to compile the numbers for voters. He subsequently discussed using a table or projected presentation. Goodrich stated that figures could be broken out for public understanding.

19. A reduction keyed to legal expenses treats the cost of bringing protected lawsuits as the measure of a personal financial burden. An updating calculation adds prospective pressure: additional protected activity may increase the amount proposed to be collected through salary.

20. The Board's public discussion and Town administrative undertaking supplied official financial preparation for the particular proposed salary mechanism. Mayotte alleges that the Board authorized that discretionary undertaking with knowledge of its personally

targeted litigation-cost purpose and that the undertaking communicated governmental participation in the threatened financial consequence.

21. At the October 14 meeting, officials separately discussed converting the elected Clerk to an appointed office. Meehan described the ordinary expectation that incumbents complete their elected terms. Town Counsel recalled that the citizens' petition contemplated a term-preserving transition.

22. On October 20, the Select Board considered a distinct special-act alternative allowing termination of the current term upon appointment of a successor. The October 26 signed warrant confirms the Board's own sponsorship of that choice as Article 3. It is a governmental proposal separate from the citizens' Chapter 43B pathway.

23. The timing, the litigation-indexed salary discussion, the Town's official cost communications, and the Board's incumbent-termination design support an inference that Mayotte's protected activity and public criticism were substantial motivating factors in the challenged governmental conduct.

## V. INJURY AND IMMINENT IMPLEMENTATION

24. Mayotte intends to continue bringing lawful petitions and speaking publicly about Town government. The announced effort to connect the expense of his lawsuits to his personal salary, considered with the Board-sponsored mechanism for early replacement, places substantial pressure on that exercise of constitutional rights. An elected official of ordinary firmness would regard exposure of present compensation and the existing elected term to governmental action in response to litigation as a serious deterrent.

25. Mayotte has continued to petition despite that pressure. His persistence does not eliminate the objectively adverse character of an official retaliatory threat. The existing salary and

elected tenure are protected interests, and the public measures now create an identifiable timeline for prospective governmental action.

26. Articles 1 and 2 are placed for a November 10 vote. Article 2 expressly directs any full-year salary adjustment to be collected through the remaining biweekly payments beginning with the next full pay period. The absence of a set FY2027 tax rate means the statutory window for a § 108 revision is presently open, making the proposed pay action a concrete pending threat.

27. Article 1 threatens the appropriation supporting the Clerk's compensation. Article 2 supplies a direct pay-reduction mechanism.

28. Article 3 creates a separate tenure threat through the Board's own proposed special legislation. The current Charter confers a three-year elected term and does not authorize ordinary executive removal of the independently elected Clerk. Townsend Charter §§ 3-4, 5-3. The article seeks an additional legal mechanism to end that term earlier.

## VI. COUNTS

### COUNT I FIRST AMENDMENT RETALIATION: ARTICLE 1 AND ARTICLE 2 FINANCIAL MEASURES (42 U.S.C. § 1983)

29. Mayotte repeats the foregoing factual allegations to the extent relevant to this count.

30. His individual judicial petitions and political speech concerning municipal records, elections, and accountability are protected by the First Amendment. The Town knew of those activities before it undertook financial preparation for a personally targeted litigation-cost salary proposal.

31. Townsend, acting through its authorized municipal process and its officers' discretionary financial assistance, advanced the particular litigation-cost calculation as the proposed basis for reducing Mayotte's compensation. He alleges that the municipal undertaking and threatened salary mechanism were motivated substantially by his protected activity and

were objectively capable of deterring continued petitions by an official of ordinary firmness.

32. Under the First Amendment, the Town may not use its own salary-setting or payroll authority to impose a personal penalty on Mayotte for petitioning the courts.

33. The Plaintiff was damaged by the actions and inactions of the Defendant.

**COUNT II FIRST AMENDMENT RETALIATION: BOARD-SPONSORED ARTICLE 3 (42 U.S.C. § 1983)**

34. Mayotte repeats the foregoing factual allegations to the extent relevant to this count.

35. The Select Board exercised its own discretionary warrant and sponsorship authority by placing Article 3 on the October 26 signed warrant as "Submitted by the Select Board." That official action is attributable to Townsend under the final-policymaker principles governing municipal liability.

36. Article 3 selects a special-act transition that would permit the early termination of Mayotte's current elected term, following the Town's repeated conflicts with his personal petitions and a contemporaneous discussion tying the expense of his litigation to a proposed personal salary reduction. Mayotte alleges that his protected speech and petitioning substantially motivated that governmental choice.

37. The constitutional claim concerns the Town's use of official authority to threaten adverse tenure consequences for protected activity and seeks to restrain any unconstitutional executive implementation.

38. The Plaintiff was damaged by the actions and inactions of the Defendant.

**COUNT III SUPPLEMENTAL MASSACHUSETTS COMPENSATION CLAIM: LEGALLY FIXED SALARY AND APPROPRIATION AUTHORITY**

39. Mayotte repeats the foregoing factual allegations concerning his elected service, the signed warrant, and the compensation articles.

40. Massachusetts law fixes elected town officers' compensation annually and authorizes a same-fiscal-year special-meeting revision only by a two-thirds vote before the tax rate is set. Mass. Gen. Laws ch. 41, § 108. The FY2027 tax rate remains unset and is not anticipated to be established for at least one month, leaving an immediate opportunity for Town Meeting action on November 10.

41. Article 2 proposes revising the salary for the full July 1, 2026 through June 30, 2027 fiscal year through adjustments imposed entirely on the remaining pay periods. The statute's authority to revise annual salary must be distinguished from authority to recover amounts already earned or to impose a litigation-cost debt through payroll without a lawful adjudication or fixed salary vote.

42. Article 1 invokes transfer authority that concerns appropriations, not the underlying salary obligation. Mass. Gen. Laws ch. 44, § 33B(b).

43. Plaintiff seeks a declaration preserving the distinction between lawful fund transfers, valid compensation revision, and any unlawful deduction from compensation due, together with equitable relief preventing statutory violations affecting his pay.

44. The Plaintiff was damaged by the actions and inactions of the Defendant.

**PRAYER FOR RELIEF**

A. Preserve Mayotte's existing gross biweekly pay against retaliatory measures under Articles 1 and 2, and prevent transfers impairing legally due compensation;

B. Protect Mayotte's current elected term against executive displacement under Article 3, require advance notice, and order expedited proceedings;

C. Declare the parties' rights under the First Amendment and Massachusetts salary and appropriation statutes;

D. Award nominal relief for completed retaliation, authorized costs and fees for compensable legal services under 42 U.S.C. § 1988, and other proper relief.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues triable of right by jury.

Dated: October 28th, 2026

/s/ HARRISON COPLEY MAYOTTE

Harrison Copley Mayotte

P.O. Box 6

Townsend, MA 01469

Email: harrison@harrisonmayotte.com

litigation@harrisonmayotte.com

*Pro se plaintiff*