UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HARRISON MAYOTTE,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF TOWNSEND,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 26-cv-14866-ADB |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

In this action, pro se Plaintiff Harrison Mayotte ("Mayotte"), the elected town clerk of Defendant Town of Townsend, Massachusetts (the "Town"), alleges that several measures recently passed by the Town constitute unlawful retaliation against him for exercising his First Amendment rights to free speech and petition. Currently before the Court is Mayotte's motion for a temporary restraining order and preliminary injunction, [ECF No. 2], in which he seeks an order barring the Town from implementing the recently passed ordinances that, inter alia, cut Mayotte's salary to pay for the Town's legal expenses from lawsuits Mayotte filed. For the following reasons, Mayotte's motion is **GRANTED**.[1]

[1] Mayotte recently filed an additional motion for emergency relief. [ECF No. 19]. Because the Court's grant of Mayotte's original motion, [ECF No. 2], affords him the full relief requested in his subsequent motion, [ECF No. 19], Mayotte's subsequent motion is **DENIED AS MOOT**.

## I. BACKGROUND

The following facts are drawn from the evidence presented by the parties, uncontested representations made by the parties, and admissions at oral argument. Except as otherwise noted, they are undisputed.

Mayotte is currently serving a three-year term as the elected town clerk of Townsend, Massachusetts. [ECF No. 2-2 ¶ 1]. In that role, he receives a salary of approximately $71,000, [ECF No. 15 at 6], paid in "regular biweekly installments," [ECF No. 2-2 ¶ 1].

During his time in office, Mayotte has brought four lawsuits against the Town, [ECF No. 15 at 7], which he characterizes as involving issues related to "Townsend elections, records access, and government accountability," [ECF No. 2-2 ¶ 2]. The first of these lawsuits, which remains pending, challenges alleged failures of town officials in "producing public records" and "responding to public records requests," among other issues. [ECF No. 15 at 7]. Another lawsuit involved the Town's alleged failure to properly preserve and produce "Town Hall security-camera records." [ECF No. 2-2 ¶ 2]; [ECF No. 15 at 7–8]. The record is unclear as to the grounds for the remaining lawsuits.

Under the Town's charter, any citizen who collects 200 voter signatures on a citizen petition may propose legislation and call a Special Town Meeting to consider it, at which any voter registered in the Town may vote on the measures presented. TOWNSEND, MASS., MUN. CHARTER § 2-5. The Town Meeting is the legislative body of the Town, and any measures passed by the Town Meeting become law. Id. § 2-1.

In or around September 2026, a citizen of the Town submitted a citizen petition which "call[ed] for a Special Town Meeting to be held to vote on a budget amendment to transfer funds from the Clerk's salary to offset the legal fees" from Mayotte's lawsuits against the Town (the

"Petition"). [ECF No. 17-1 at 4]. In an email to The Lowell Sun, the Town citizen who submitted the Petition wrote that its purpose was to "ris[e] up against the actions of the Town Clerk," because "[w]e are being forced to defend these lawsuits at the expense of our taxpayers, and we are angry." [Id. at 3]. The citizen further wrote, "He didn't care about wasteful spending when it was coming out of the taxpayers pockets. Perhaps he'll care when it's coming out of his own pocket," and "[W]e are coming together to stop him." [Id. at 4].

The Petition consisted of two Articles, the first of which proposed to reallocate money in the Town's budget "from the Fiscal Year 2027 Town Clerk Salary line item to the Fiscal Year 2027 Legal Expenses operating line item" ("Article 1") and the second of which proposed to reduce the Fiscal Year 2027 salary of the town clerk "to a reduced total amount" reflecting the reallocation of funds in the Town's budget ("Article 2"). [ECF No. 1-3 at 1]. The amount proposed to be reallocated by the Petition was measured by the "actual legal fees" incurred by the Town as a result of Mayotte's lawsuits. [ECF No. 2-2 ¶ 7]. After the citizen submitted the Petition and discussed it at a meeting of the Town's executive body, the Town's administrator offered to prepare and present an accounting for voters of the amounts that would be reallocated under the proposal. [Id.].

On October 27, 2026, pursuant to the Town's procedures, the Select Board issued a warrant scheduling a Special Town Meeting for November 10, 2026, to vote on the Articles submitted by the Petition, among other measures. [ECF No. 1-3 at 1]. In addition to the two Articles submitted by the Petition, the warrant also included a third Article submitted by the Select Board itself, which proposed amending the Town's charter to change the position of town clerk from an elected position to one appointed by the Select Board ("Article 3"). [Id. at 1–2].

On October 28, 2026, Mayotte filed the present lawsuit, [ECF No. 1], as well as the present motion for a temporary restraining order and preliminary injunction, seeking to enjoin implementation of the three Articles set to be voted upon at the Special Town Meeting, [ECF No. 2]. The Court held a hearing on November 4, 2026, at which it expressed its view that the motion was premature because the Town had not yet voted on the challenged Articles, and ruled that it would hold the present motion in abeyance pending the Special Town Meeting. [ECF No. 15 at 5, 8]. The Court directed the parties to file a status report after the Special Town Meeting to inform the Court of its outcome. [Id. at 13, 15].

On November 12, 2026, both parties filed status reports informing the Court that the Special Town Meeting had occurred and that all three challenged Articles had passed. [ECF No. 17]; [ECF No. 18]. Article 2, which was addressed first, passed with 102 votes in favor and 25 against; Article 1 passed via voice vote; and Article 3 passed with 87 votes in favor and 36 against. [ECF No. 17 at 2]; [ECF No. 18 at 2–4]. Both parties' status reports contained additional evidence and argument regarding the present motion, which the Court has considered as supplemental briefing.

## II. LEGAL STANDARD

Preliminary relief under Federal Rule of Civil Procedure 65[2] is an "extraordinary and drastic remedy" that "is never awarded as of right." Voice of the Arab World, Inc. v. MDTV

---

[2] Mayotte's motion seeks both a temporary restraining order and a preliminary injunction. [ECF No. 2]. Because "[c]ourts apply the same standard in assessing" both forms of relief, and here, the Court is considering the motion "follow[ing] full briefing and the opportunity to be heard by the Court," it evaluates the requests together. Massachusetts v. Nat'l Insts. of Health, 770 F. Supp. 3d 277, 295 (D. Mass. 2025) (citing Wash. Tr. Advisors, Inc. v. Arnold, 646 F. Supp. 3d 210, 217 (D. Mass. 2022)).

Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689–90 (2008)). In deciding whether to grant such relief, courts must consider four factors: "(i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)). The moving party bears the burden of establishing each of the four elements. See Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).

These four factors "are not entitled to equal weight in the decisional calculus." Corp. Techs., 731 F.3d at 9. Rather, the movant's likelihood of success on the merits "is the main bearing wall of the four-factor framework." Id. at 10 (quoting Ross-Simons of Warwick, 102 F.3d at 16). "[P]roving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2015) (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)). Unless the movants can "demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Id. (quoting New Comm Wireless Servs., 287 F.3d at 9).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

Mayotte's complaint asserts a claim against the Town for retaliating against him in violation of his First Amendment rights to speak freely and petition the government. Based on the limited record before it, the Court finds that Mayotte is likely to succeed on this claim.[3]

In considering First Amendment retaliation claims by public employees, courts apply the same framework applicable to claims alleging retaliation based on speech (under the Speech Clause) to claims alleging retaliation based on the filing of lawsuits (under the Petition Clause). Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 398–99 (2011). This shared framework entails "a three-part inquiry." Bruce v. Worcester Regl. Transit Auth., 34 F.4th 129, 135 (1st Cir. 2022) (quoting Gilbert v. City of Chicopee, 915 F.3d 74, 82 (1st Cir. 2019)).

First, the plaintiff must show that he "spoke as a citizen on a matter of public concern," id. (quoting Gilbert, 915 F.3d at 82), or, in a Petition Clause claim, that his "petition relates to a matter of public concern," Guarnieri, 564 U.S. at 398. If he makes this showing, the Court must then balance "the employee's First Amendment interest" against "the countervailing interest of the government in the effective and efficient management of its internal affairs," id. (citing Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)), and determine whether "the relevant government entity had an adequate justification for treating the employee differently from any

[3] Mayotte's complaint also asserts a claim against the Town for violations of state laws regarding the setting of public officials' salaries. [ECF No. 1 ¶¶ 39–44]. Because the Court concludes that Mayotte is likely to succeed on his First Amendment claims, and a "plaintiff need only establish a likelihood of succeeding on the merits of any one of [its] claims for a preliminary injunction to be granted," de Jesus Santos v. Mullin, 839 F. Supp. 3d 39, 60 (D. Mass. 2026) (quoting President & Fellows of Harvard Coll. v. United States Dep't of Homeland Sec., 788 F. Supp. 3d 182, 209 (D. Mass. 2025)), it does not address this claim.

other member of the general public," Bruce, 34 F.4th at 135 (quoting Curran v. Cousins, 509 F.3d 36, 45 (1st Cir. 2007)). If it did not, the Court must finally determine whether "the protected expression [or petitioning activity] was a substantial or motivating factor in the adverse employment decision," id. (quoting Curran, 509 F.3d at 45).

1. Matter of Public Concern

The Court first asks whether Mayotte's lawsuits "relate[] to a matter of public concern." Guarnieri, 564 U.S. at 398. A petition "involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" Lane v. Franks, 573 U.S. 228, 241 (2014) (quoting Snyder v. Phelps, 562 U.S. 443, 453 (2011)). "[W]hether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the petition], as revealed by the whole record.'" Guarnieri, 564 U.S. at 398 (quoting Connick v. Myers, 461 U.S. 138, 147–48 (1983)).

Although the record is somewhat sparse regarding the precise nature of Mayotte's lawsuits, the Court is satisfied at this early stage that they likely relate to matters of public concern. Mayotte attests that his lawsuits related to "Townsend elections, records access, and government accountability." [ECF No. 2-2 ¶ 2]. The Town's description of two of the lawsuits confirm that those matters challenge alleged failures in "producing public records" and "responding to public records requests," as well as the premature "destr[uction]" of public materials. [ECF No. 15 at 7–8]. The Town does not contest that Mayotte's lawsuits relate to matters of public concern. See generally [ECF No. 12]; [ECF No. 18].

A municipality's compliance with its public disclosure obligations and treatment of its municipal records is likely a "subject of general interest and of value and concern to the public." Lane, 573 U.S. at 241 (quoting Snyder, 562 U.S. 443, 453 (2011)); see Burne v. Siderowicz, 445 F. App'x 529, 532 (3d Cir. 2011) (noting that a "connection to . . . transparency in government affairs" is "normally characteristic of an issue of public concern"). A lawsuit involving these issues stands in contrast to the "internal grievance procedure" or "complaint about a change in the employee's duties" that the Supreme Court has found to implicate only private concerns. Guarnieri, 564 U.S. at 398–99. Indeed, the record indicates that Mayotte's lawsuits have been the subject of multiple articles in The Lowell Sun, evincing public concern over their subject matter. [ECF No. 17-1 at 2–3]. Accordingly, the Court finds that Mayotte is likely to succeed in showing that his petitioning activities related to matters of public concern.

2. Balancing of Interests

The Court next balances Mayotte's "First Amendment interest . . . against the countervailing interest of the government in the effective and efficient management of its internal affairs." Guarnieri, 564 U.S. at 398 (citing Pickering, 391 U.S. at 568). In assessing the balance of interests, courts consider "(1) 'the time, place, and manner of the employee's [petitioning],' and (2) 'the employer's motivation in making the adverse employment decision.'" Bruce, 34 F.4th at 138 (quoting Decotiis v. Whittemore, 635 F.3d 22, 35 (1st Cir. 2011)). At bottom, the inquiry asks whether "the employee 'face[d] only those [petitioning] restrictions that are necessary for [his] employer[ ] to operate efficiently and effectively.'" Id. (quoting Garcetti v. Ceballos, 547 U.S. 410, 419 (2006)). Neither party offers argument on this aspect of the applicable First Amendment test, and the Town does not contend that Mayotte's lawsuits justified the adverse actions against him.

Considering both parties' interests, the Court finds that the balance weighs toward Mayotte. The Town's sole legitimate interest in retaliating against Mayotte for his lawsuits is the avoidance of litigation costs. See [ECF No. 17-1 at 3–4]. Although the Court has no doubt that Mayotte's lawsuits have been bothersome and expensive for the Town, accepting this interest as a justification for its actions would nullify the Petition Clause for public employees. Protected petitioning is, by its very nature, nearly always bothersome and expensive for the party against whom the petitioner seeks redress of grievances.

On the other side of the ledger, the Town's actions here impose extraordinary burdens on Mayotte's right to petition. By requiring Mayotte to personally bear the costs the Town has incurred as a result of his litigation, the challenged Articles create enormous coercive pressure on Mayotte to cease any further petitioning activity. He has explained, "When I decide whether to file or continue a petition concerning Town conduct, I must consider that the expense of pursuing it could be included in the figure used to reduce my personal pay." [ECF No. 2-2 ¶ 10]. Indeed, that chilling effect appears to be exactly the point, with the citizen sponsor of two of the challenged Articles writing: "He didn't care about wasteful spending when it was coming out of the taxpayers pockets. Perhaps he'll care when it's coming out of his own pocket." [ECF No. 17-1 at 4]. Likewise, Article 3, which abolishes Mayotte's elected position and replaces him with a town clerk appointed by the Select Board, has a similar coercive effect to the extent it punishes Mayotte for his past petitioning activity.

Accordingly, the Court finds that the challenged Articles implicate protected First Amendment rights and do not impose "only those [petitioning] restrictions that are necessary for [Mayotte's] employer[ ] to operate efficiently and effectively," Bruce, 34 F.4th at 138 (quoting Garcetti, 547 U.S. at 419).

3. Causation

The final question the Court must answer is whether "the protected expression [or petitioning activity] was a substantial or motivating factor in the adverse employment decision," Bruce, 34 F.4th at 135 (quoting Curran, 509 F.3d at 45). To satisfy the causation element, an employee must "show that the employer would not have taken adverse action but for the plaintiff's [petitioning activity]." Salmon v. Lang, 57 F.4th 296, 308–09 (1st Cir. 2022) (quoting Davignon v. Hodgson, 524 F.3d 91, 106 (1st Cir. 2008).

Causation is the only element of Mayotte's First Amendment claim that the Town is affirmatively disputing. The Town argues that it "is unlikely that the Plaintiff will be able to establish that the voters that voted in favor of the Articles did so because of a retaliatory animus" as "the voters at the Special Town Meeting could be motivated to vote a particular way by any number of different reasons." [ECF No. 12 at 10]. In its supplemental briefing, the Town argues again that the voters at the Special Town Meeting passed the challenged Articles due to "legitimate budgetary concerns and legitimate performance issues concerning the Town Clerk position that need to be addressed." [ECF No. 18 at 6].

The Town's attempt to contrast "retaliatory animus" with "legitimate budgetary concerns" misses the point. The relevant question is not whether the challenged actions arose from personal hostility, malice, or illegitimate concerns; it is whether the challenged actions would have occurred in a world where Mayotte had not filed his lawsuits. See Salmon, 57 F.4th at 308–09. The record is overwhelmingly clear, at least in relation to Articles 1 and 2, that they would not have occurred. Articles 1 and 2 do nothing other than reallocate the expenses incurred as a result of Mayotte's lawsuits. The impact of these Articles is therefore inextricably linked to the existence of Mayotte's lawsuits. In any event, the statements of the citizen petitioner—who

described the impetus of the Articles as "ang[er]" at "being forced to defend these lawsuits at the expense of our taxpayers," [ECF No. 17-1 at 3], and their goal as "coming together to stop [Mayotte]," [id. at 4]—make clear that those Articles' overriding purpose was to discourage Mayotte from filing lawsuits against the Town. Cf. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 268 (1977) (explaining that "contemporary statements by members of the decisionmaking body" can be "highly relevant" in determining the motive of a challenged law).

Although the record is less clear about the motives underlying Article 3, its relationship to Articles 1 and 2 persuade the Court at this early stage that it likely arose from similar motivations. Article 3 was proposed at around the same time as Articles 1 and 2, was voted upon as part of the same sequence of measures,[4] and, most importantly, targeted the same individual for adverse employment consequences. The Town's decision to pass a measure effectively terminating Mayotte's employment at the same time it passed other measures targeting Mayotte for his protected petitioning activity raises a strong inference that Article 3 would not have been proposed or passed if Mayotte had not brought his lawsuits. The Town may be able to contest this inference through contrary evidence at later stages of the litigation, but at this point the Court has seen nothing that dissuades it of the apparent relationship between Articles 1, 2, and 3.

Accordingly, the Court concludes that Mayotte is likely to succeed on his First Amendment retaliation claim against the Town.

---

[4] Indeed, it is notable that Articles 1, 2, and 3 were the only measures adopted at the November 10, 2026 Special Town Meeting. [ECF No. 17 at 2].

**B. Other Injunctive Relief Factors**

The Court likewise finds that the other injunctive relief factors favor Mayotte's requested injunction.

Mayotte is likely to suffer irreparable harm. "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Sindicato Puertorriqueno de Trabajadores v. Fortuno, 699 F.3d 1, 10–11 (1st Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, "irreparable injury is presumed upon a determination that [a plaintiff] [is] likely to prevail on [his] First Amendment claim." Id. Although the Town had not yet passed the challenged Articles at the time Mayotte first filed his lawsuit, it has since done so, leading to what the Court has already concluded is likely an ongoing deprivation of Mayotte's First Amendment rights. The Town has offered nothing to rebut the resulting presumption of irreparable harm. Accordingly, the irreparable harm factor weighs in favor of an injunction.

The balance of equities and public interest factors likewise weigh in Mayotte's favor. These two factors "merge" when a governmental entity is the opposing party. Does 1-6 v. Mills, 16 F.4th 20, 37 (1st Cir. 2021) (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)). The Court recognizes that granting an injunction against the implementation of the challenged Articles would impose some degree of financial burden on the Town. Declining to enjoin the Town's conduct, however, would result in an equivalent financial burden falling upon Mayotte, in the form of a cut to his personal salary. The remaining equities are, on one side of the scale, the harm the Town would face from being "enjoined by a court from effectuating statutes enacted by representatives of its people," Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo, 18 F.4th 38, 47 (1st Cir. 2021), and, on the other side, the

continuing burden upon Mayotte's First Amendment rights from continued enforcement of the challenged Articles. Because "the government is not harmed by an injunction enjoining it from implementing an unlawful or unconstitutional policy," New England Synod v. Dep't of Homeland Sec., 824 F. Supp. 3d 118, 164 (D. Mass. 2026), and it is "always in the public interest to prevent the violation of a party's constitutional rights," Dorce v. Wolf, 506 F. Supp. 3d 142, 145 (D. Mass. 2020) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)), the Court finds that the equities, and the public interest, weigh strongly in favor of granting the requested injunction.

## IV. CONCLUSION

For the foregoing reasons, Mayotte's motion for a temporary restraining order and preliminary injunction, [ECF No. 2], is **GRANTED**. The Court finds bond, which the Town has not requested, inappropriate given the important rights at stake and the risk of deterring protected conduct. See Ozturk v. Trump, 819 F. Supp. 3d 45, 62 (D. Mass. 2025) ("The Court has discretion to dictate the terms of an injunction bond, including declining to require one."). Because the Court's grant of Mayotte's original motion, [ECF No. 2], affords him the full relief requested in his subsequent motion for injunctive relief, [ECF No. 19], Mayotte's subsequent motion is **DENIED AS MOOT**.

Pursuant to Federal Rule of Civil Procedure 65(a), the Court orders as follows:

1. Until the end of Mayotte's current elected term as town clerk and any future terms to which he is elected, or until this Order is dissolved (whichever is earlier), the Town, its officers, agents, employees, and persons in active concert or participation with it shall not, by reason of Article 1 approved at the November

10, 2026, Special Town Meeting, implement a transfer of funds from the FY2027 Clerk Salary appropriation to the FY2027 Legal Expenses appropriation.

2. If, as of the issuance of this Order, the Town or any of its officers, agents, employees, or persons in active concert or participation with it has, by reason of Article 1 approved at the November 10, 2026, Special Town Meeting, already implemented the transfer of funds described in that Article, it shall as soon as practicable conduct additional transfers of funds as necessary to restore the FY2027 Clerk Salary appropriation to the amount at which it stood immediately prior to the November 10, 2026, Special Town Meeting.
3. Until the end of Mayotte's current elected term as town clerk and any future terms to which he is elected, or until this Order is dissolved (whichever is earlier), the Town, its officers, agents, employees, and persons in active concert or participation with it shall not, by reason of Article 2 approved at the November 10, 2026, Special Town Meeting, reduce, recoup, offset, or withhold any portion of the compensation legally due to Mayotte under the town clerk salary rate lawfully in effect immediately prior to the November 10, 2026, Special Town Meeting.
4. If, as of the issuance of this Order, the Town or any of its officers, agents, employees, or persons in active concert or participation with it has, by reason of Article 2 approved at the November 10, 2026, Special Town Meeting, taken any action to reduce the compensation due to Mayotte beneath the salary rate lawfully in effect immediately prior to the November 10, 2026, Special Town Meeting, it

shall as soon as practicable withdraw any such reduction and take steps necessary to restore Mayotte's salary to the amount at which it stood prior to such reduction.

5. Until the end of Mayotte's current elected term as town clerk and any future terms to which he is elected, or until this Order is dissolved (whichever is earlier), the Town, its officers, agents, employees, and persons in active concert or participation with it shall not, by reason of Article 3 approved at the November 10, 2026, Special Town Meeting or any charter amendment effectuated thereby, appoint a replacement town clerk or otherwise terminate or substantially restructure the terms, conditions, or responsibilities of Mayotte's employment as town clerk.

6. If, as of the issuance of this Order, the Town or any of its officers, agents, employees, or persons in active concert or participation with it has, by reason of Article 3 approved at the November 10, 2026, Special Town Meeting, already appointed a replacement town clerk or otherwise terminated or substantially restructured the terms, conditions, or responsibilities of Mayotte's employment as town clerk, it shall as soon as practicable take steps necessary to restore Mayotte's employment to the status it held immediately prior to the November 10, 2026, Special Town Meeting.

**SO ORDERED.**

November 18, 2026

*<u>/s/ Allison D. Burroughs</u>*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE